UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:21-CV-00079-BJB-HBB

KATHERINE STERETT, et al.                                              PLAINTIFFS

VS.

TBM CARRIERS, INC, et al.                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the Plaintiffs to compel discovery from Defendant Ford Motor Company (DN 68). Ford has filed a Response in opposition (DN 70), and Plaintiffs have replied (DN 74). For the reasons that follow, Plaintiffs' motion to compel discovery (DN 68) is **GRANTED IN PART** and **DENIED IN PART**.

### Nature of the Case

On July 10, 2020, William Sterett, III was traveling South on Interstate 165 in Ohio County, Kentucky. He was operating a 2017 Ford F-150 pickup truck, which he had recently purchased used. The truck was a "SuperCrew" model with a rear seat. His four sons were riding as passengers, three in the back seat and one in front.

Mr. Sterett contends that he was operating the vehicle on cruise control and viewing emails on his cell phone. He further contends that he encountered a slow-moving tractor trailer owned by Defendant TMB Carriers, which had pulled back onto the roadway from the shoulder. According to Plaintiffs' motion, Mr. Sterett did not observe the tractor trailer until nearly at the point of impact and took evasive action less than one second before colliding with the rear of the

trailer and Mr. Sterett's son Isaac, sitting in the passenger side front seat, was killed. Mr. Sterett's three other sons sitting in the back seat sustained injuries.

Relevant to the present motion, Plaintiffs allege that the Ford pickup truck was defective because it was not equipped with any of three types of crash avoidance safety systems which they contend would have allowed Mr. Sterett to avoid the collision. Specifically, these systems included Forward Collision Warning, which produces warning lights and sound upon the rapid approach to another vehicle. The system further prepares, but does not automatically engage, the braking system for rapid braking. Alternatively, another safety system Plaintiffs allege should have been installed on the truck was Automatic Emergency Braking. This operates similarly to the Forward Collision Warning, with the additional ability to automatically apply the brakes when a forward collision appears imminent. A third type of system Plaintiffs contend should have been installed on the truck was Adaptive Cruise Control. This system maintains a distance from a vehicle ahead by braking as necessary. If the system detects that the maximum braking level is insufficient, it initiates an audible and visual warning to alert the driver to take action. Plaintiffs' motion seeks production of information about Ford vehicles for which the systems were offered as optional or standard equipment.

### Plaintiffs' Motion

As this case is before the Court on diversity jurisdiction, Kentucky's substantive law applies. Quoting <u>Toyota Motor Corp. v.</u> Gregory, 136 S.W.3d 34, 41 (Ky. 2004), Plaintiffs state that, under Kentucky law, in order to prevail on a crashworthiness action the plaintiff must establish (1) that there was an alternative safer design, practical under the circumstances; (2) proof of what injuries, if any, would have resulted had the alternative safer design been used; and (3) some method of establishing the extent of enhanced injuries attributable to the defective design

(DN 68-1, p. 4). Plaintiffs contend that the discovery at issue is relevant to the existence of safer designs in the form of the three previously discussed safety systems.

Three related sets of interrogatories are at issue. Plaintiffs submitted interrogatories to Ford asking it to identify its pre-2018 model year vehicles sold in the United States which incorporated any of the three systems and whether the systems were offered as an option, part of an optional package of features, or as a standard feature. These interrogatories will be characterized as the "domestic market interrogatories."

The second set of interrogatories made the same inquiry regarding pre-2018 models sold in foreign markets (outside Ford's North America market). These interrogatories will be characterized as the "foreign market interrogatories."

Finally, the third set of interrogatories made the same inquiry regarding pre-2018 models sold by any "subsidiary car company." These will be characterized as the "subsidiary interrogatories."

As to the domestic market interrogatories, Plaintiffs state that Ford provided a list of vehicles identifying which pre-2018 models had any of the three safety systems installed as standard equipment or available as an option. However, Ford objected to providing the information about vehicles sold in the foreign market or vehicles sold by Ford subsidiary entities. Plaintiffs argue that the information is relevant because it has reason to believe that Ford "often installs safety features as standard equipment in vehicles it sells in foreign markets – often years before making the safety systems standard equipment in domestic (North America) markets" (Id. at p. 10). More specifically, Plaintiffs state that they believe Ford installed the safety systems on foreign-market vehicles as optional or standard equipment for several years before making them available in the United States (Id. at p. 11). As to vehicles sold by Ford subsidiaries, including

3

Aston-Martin, Jaguar, Land Rover and Volvo, Plaintiffs state that they believe the safety systems were installed in many, if not all, vehicles sold by the subsidiaries in domestic and foreign markets (Id. at p. 12).

As to the relevance of the information sought, Plaintiff's contend "[t]he alternative safer design evidence Plaintiffs seek, and which Ford refuses to voluntarily provide, shows not just that these alternative designs (Forward Collision Warning, Automatic Emergency Braking and Adaptive Cruise Control) were feasible, but that Ford was actually incorporating these safer designs in other vehicles for many years, and likely making them available in scores of foreign countries before doing so in the United States" (Id. at p. 13).

Plaintiffs recognize that, under Fed. R. Civ. P. 26(b) discovery requests must be "proportional to the needs of the case."  In assessing whether the discovery is "proportional to the needs of the case," courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(1); Advisory Committee Notes 2015 Amendment.  The Rule also directs that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  Id.

Plaintiffs contend that the issue at stake is of prime importance in the case.  "It is not enough for Ford to simply acknowledge that an alternative safer design was feasible, or in existence, Ford's design and development of these safety systems for a wide range of vehicles, used in multiple geographic areas and terrains, is important to establishing the effectiveness of the technology, the acceptance of the technology and why it should have been offered as standard equipment" (DN 68-1, p. 14-15).

4

As to the amount in controversy, Plaintiffs note that the case arises from the death of a child, his mother's claim for loss of consortium, and personal injury claims by three other children. They claim damages in the multiple millions of dollars.

Addressing the parties' relative access to the information, Plaintiffs contend that only Ford has access to the information about safety systems installed on foreign market vehicles or those sold by Ford's subsidiaries. Anticipating an argument by Ford that Plaintiffs could obtain the information from publicly available documents, Plaintiffs note the complexity of identifying all the vehicles Ford and its subsidiaries have manufactured in the last 20 years and then locating an owner's manual to ascertain the options provided, many of which may not be printed in English.

The Plaintiffs contend that Ford clearly has the superior financial resources to undertake the discovery given that it operates globally with revenues in the billions of dollars.

Finally, Plaintiffs assert that the discovery is not only important, it is critical to the case:

> It will show that: Ford had knowledge of these safety features for over 20 years before Mr. Sterett's F-150 was assembled on January 13, 2017 (to rebut the argument of new and novel technology); that Ford placed these collision avoidance safety features in various makes and models of vehicles (to rebut the argument that these systems can only work in certain vehicles); that Ford installed these collision avoidance safety systems as standard equipment in foreign vehicles, but that Ford would generally offer these safety features as "optional" equipment in mid-level vehicles, and standard equipment on high-end vehicles, to increase U.S. profits. This evidence will also support punitive damages.

(DN 68-1, p. 16-17).

Ford's Response

Ford observes that the Plaintiff's vehicle, a 2017 F-150 pickup, was not equipped with any of the safety systems previously discussed.[1] The Forward Collision Warning and Adaptive Cruise

---

[1] Ford states that Forward Collision Warning and Adaptive Cruise Control were optional on F-150 pickup trucks beginning in the 2015 model year and were available options on the Plaintiffs' truck. Automatic Emergency Braking

Control were available as options for the Plaintiff's pickup, but neither were ordered by the original purchaser. The third type of feature, Automatic Emergency Braking, was not offered on any F-150 pickups in the 2017 model year but was available as an option on some other 2017 Ford vehicles. Ford has responded to the Plaintiff's discovery requests regarding the domestic market and created a list of Ford vehicles offered with any of the three safety systems sold in the United States in model year 2017 and earlier.

Ford contends that Plaintiffs' demands for the information relating to foreign market vehicles or those manufactured by Ford subsidiaries are irrelevant to their claims. This is because Ford does not dispute that the safety features were available on some Ford vehicles manufactured for sale in the United States before the 2017 model year, or that two of the systems were offered as optional features on the Plaintiffs' pickup truck. Ford notes that the issues to be decided in the case are whether those features should have been standard on the Ford F-150 in 2017 and, if so, whether the features would have prevented the accident or mitigated the harm.

Addressing the issue of whether the burden imposed by producing the information about vehicles sold in foreign markets or by subsidiary companies outweighs its value, Ford notes that it expended significant time and resources in producing the information about vehicles sold domestically. There was no preexisting list, so Ford first identified what vehicles it sold during the time frame in question. 30 vehicle programs were identified. Ford next identified what trim levels were available for each vehicle program. Over 100 different trim levels were identified. Ford then manually reviewed over 100 different order guides or owner's manuals for each vehicle program to determine what programs had the safety systems available generally, and then

---

was first optional for the 2018 F-150 model and became standard equipment in the 2019 model year. It was not an available option for Plaintiffs' 2015 model. (DN 70, p. 5-6).

identified which trim levels had them as options or standard features. Ford states the process took approximately 35 hours to complete (DN 70, p. 13-14).

Ford states the task of making the same inquiry for foreign market produced vehicles is more daunting, as it does not have the same information resources to draw upon. Ford's foreign counterparts are separate legal entities and Ford states they number in the hundreds. Ford has made an effort to determine if the requested information can be obtained but has concluded that it could only do so by the same route available to the Plaintiffs – searching for and reviewing publicly-available documents (Id. at p. 70). Ford states that it faces the same problem in identifying vehicles sold by subsidiaries, as the subsidiaries were sold thirteen or more years ago.

Addressing Plaintiffs' arguments on relevance, Ford states "Ford does not dispute that these technology features were offered in some other Ford vehicles in model year 2017 and earlier, as demonstrated by the list provided by Ford reflecting domestic vehicles with FCW, AEB, or ACC as standard or optional by trim level. Whether such features would have altered the outcome of the subject collision is, of course, a different question" (Id. at p. 18). Ford further notes that Plaintiffs claim the lists will establish the effectiveness and acceptance of the technology and why it should have been offered as standard equipment, but asks "how" a list of the nature requested would prove any of this. "A list of vehicles equipped with FCW, AEB, or ACC does absolutely nothing to establish the effectiveness of technology, whether the technology was accepted, or why it should have been offered as standard equipment" (Id. at p. 18-19). Notwithstanding its concessions about the existence of the safety systems, Ford makes clear that it "is not conceding that it was feasible to install FCW or ACC on every 2017 F-150 pickup, or that it was feasible to install AEB on any 2017 F-150 vehicle" (Id. at p. 18 n.4).

Plaintiffs' Reply

Plaintiffs contest Ford's argument that, having conceded the existence of the safety features in other vehicles it sold prior to the 2017 model year, the additional discovery requested is irrelevant. "Any reasonable juror could infer (and Plaintiffs' expert witnesses will testify), that the design, testing and incorporation of these safety features on other vehicles for over 15 years, is evidence that the safety features could have been incorporated as standard equipment in 2017 model year F-150 pickup trucks" (DN 74, p. 5). Plaintiffs contend that a radar or camera installed in a Jaguar or Volvo "sees the exact thing same as a radar or camera installed in pickup truck" (Id.). Plaintiffs acknowledge that the computer algorithm operating the system would have to be calibrated for the specific vehicle line (Id. n.8).

Plaintiffs dispute Ford's contention that it would be unduly burdensome for Ford to undertake the investigation of foreign market vehicles as it represents itself as a "global brand" and Ford's internal communications demonstrate that Ford was directly involved in the decision-making process regarding safety systems installed in foreign market vehicles.

Discussion

Rule 26(b)(1) of the Federal Rules of Civil Procedure guides the evaluation of any discovery request. The Rule provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . ." Fed. R. Civ. P. 26(b)(1). In assessing whether the discovery is "proportional to the needs of the case," courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.; Advisory Committee Notes

2015 Amendment. The Rule also directs that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id.

Resolving the relevance of Plaintiffs' discovery requests begins first with an examination of what they must prove in order to prevail on their claim against Ford for defective design. In Trent v. Ford Motor Co. the Court outlined the proof required in a case of this nature:

> Kentucky law governs this diversity action. To impose liability upon a manufacturer for an allegedly defective product, Kentucky law requires a showing that the product is "in a defective condition unreasonably dangerous to the user or consumer." Morales v. Am. Honda Motor Co., 151 F.3d 500, 506 (6th Cir. 1998) (quoting Montgomery Elevator Co. v. McCullough, 676 S.W.2d 776, 780 (Ky. 1984)). In matters of defective design, "the standard required is reasonable care." Jones v. Hutchinson Mfg. Inc., 502 S.W.2d 66, 69-70 (Ky. 1973). A product is considered "defective" when "it is made according to an unreasonably dangerous design." Id. at 69. The fact-finder must determine whether the product's design itself was a defective condition that was unreasonably dangerous to consumers. Nichols v. Union Underwear Co., Inc., 602 S.W.2d 429, 434 (Ky. 1980).
>
> "[P]roof of nothing more than that a particular injury would not have occurred had the product which caused the injury been designed differently is not sufficient to establish a breach of the manufacturer's or seller's duty as to the design of the product." Jones, 502 S.W.2d at 70. Rather, in order to establish a design defect, a plaintiff must prove the following:
>
>> First, in establishing that the design in question was defective, the plaintiff must offer proof of an alternative safer design, practicable under the circumstances . . . Second, the plaintiff must offer proof of what injuries, if any, would have resulted had the alternative, safer design been used. . . . Third, . . . the plaintiff must offer some method of establishing the extent of enhanced injuries attributable to the defective design.
>
> McCoy v. Gen. Motors Corp., 47 F. Supp. 2d 838, 839-40 (E.D. Ky. 1998) (quoting Caiazzo v. Volkswagenwerk A.G., 647 F.2d 241, 250 (2d Cir. 1981)).

Trent v. Ford Motor Co., 2 F. Supp. 3d 1022, 1025-26 (W.D. Ky. 2014). Trent further instructs that a plaintiff "must show more than a conclusion that it was 'theoretically probable that a different design would have been feasible and would have prevented [the] injury.'" Id. at 1026 (quotation omitted). A plaintiff "must provide expert testimony establishing 'competent evidence of some practicable, feasible, safer, alternative design.'" Id. (quoting O'Bryan v. Volkswagen of Am., 39 F.3d 1182, 1994 WL 599450, at *4 (6th Cir. 1994))

Consequently, Plaintiffs must as a threshold prove that there was an alternative, safer design. They contend that any of the three safety systems should have been installed as standard equipment on the F-150 pickup truck, as it would have detected the slow-moving vehicle ahead and provided a warning or initiated braking. Ford does not contest that the purposes of the safety systems is to warn of a vehicle ahead and/or assist in braking. Ford does not contest that the safety systems existed for the 2017 model year. Ford does not contest that Forward Collision Warning and Adaptive Cruise Control were available as options, but not standard on the Plaintiff's pickup. Ford does not contest that Automatic Emergency Braking was not utilized on 2017 F-150 pickup trucks but was utilized on other Ford vehicles during the 2017 model year and later made available first as an option and then standard equipment on F-150 trucks. This clearly demonstrates the existence of an alternative design. Contrary to Plaintiffs' contention that the evidence is relevant to rebut an argument that the safety systems are new and novel designs, Ford concedes that two of the systems were actual options for Ford F-150 pickups at the time this truck was manufactured and one of the systems was available in other Ford products and eventually available for this model. Clearly, there is no argument to be made that the systems were new or novel. The undersigned is not persuaded that "more is better" with regard to lists of foreign market and

10

subsidiary manufactured vehicles for which the safety systems were standard equipment in light of Ford's concession of the existence of alternative designs for the F-150 pickup model in question.

A related fact Plaintiffs must also prove is whether installation of the safety systems was "practicable under the circumstances." Ford makes clear that it intends to contest any such argument: "Ford is not conceding that it was feasible to install FCW or ACC on every 2017 F-150 pickup, or that it was feasible to install AEB on any 2017 F-150 vehicle" (DN 70, p.18 n.4). Ford does not contest that it was feasible to install Forward Collision Warning or Adaptive Cruise Control on at least *some* F-150 trucks, because they were available as options. It does not explain why it was not feasible to install them on all trim lines as standard. Similarly, Ford does not explain why it was not feasible to install Automatic Emergency Braking on *any* 2017 F-150 trucks, but was feasible to install it as an option the next model year and standard the following model year. Certainly, if Ford made Forward Collision Warning or Adaptive Cruise Control standard equipment on F-150 trucks sold in the foreign market during the time in question or offered Automatic Emergency Braking on foreign market F-150 trucks before 2018, this would be relevant to Ford's claim that it was not feasible to install them on domestic models. However, Plaintiffs' requests go far beyond what Ford was offering on F-150 trucks sold in the foreign market[2] – they seek information about all vehicles. This does not cast light on the feasibility of installing the systems as standard on F-150 trucks.

The second and third facts which Plaintiffs must prove look to the injuries they sustained. They must prove that, had any of the safety systems been in place, their injuries would have been avoided or lessened. Plaintiffs do not advance any argument that the requested discovery would bear upon either of these issues.

---

[2] The undersigned presumes that subsidiaries such as Volvo and Jaguar did not manufacture or sell F-150 pickup trucks.

Consequently, the undersigned concludes that Plaintiffs have not demonstrated the relevance of information as to the availability of the safety systems for *all* Ford vehicles sold in the foreign market or by subsidiary entities. It would be relevant, however, if Ford F-150 pickup trucks sold in the foreign market for the 2017 or prior model years had Forward Collision Warning, Adaptive Cruise Control or Automatic Emergency Braking systems as standard equipment. Having determined that this portion of Plaintiffs' outstanding discovery requests is relevant, attention turns next to proportionality.

The factors to be considered are the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Here, the issue at stake in the action is the feasibility of having the safety systems as standard equipment and the requested discovery is important to that issue. The amount in controversy is substantial. While Ford has characterized the foreign market companies as separate business entities, the undersigned finds it difficult to believe that Ford would not know which of those entities sold F-150 pickup trucks, or that it would have to resort to publicly available information to obtain information about whether the safety features were standard on those trucks. In sum, the undersigned perceives Ford to be in a superior position to obtain the information. There is no question that Ford has the resources to undertake the search for information. Finally, Ford indicated that it expended some 35 hours to provide the information for *all* Ford vehicles sold in the domestic market. With the scope of the search limited to Ford F-150 trucks, the undersigned anticipates a similar time expenditure to determine the information, and this is not overly burdensome given the nature of the claims in the action. In

sum, the discovery, as limited to F-150 trucks sold in the foreign markets, is proportional to the needs of the case.

ORDER

**WHEREFORE**, the Plaintiffs' motion to compel discovery (DN 68) is **GRANTED IN PART** and **DENIED IN PART**. Ford will provide answers to Plaintiffs' discovery requests regarding F-150 pickup trucks sold in the foreign markets **within 30 days of this Order**.

July 31, 2023

H. Brent Brennenstuhl
United States Magistrate Judge

Copies to:    Counsel of Record